[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 11426
On July 13, 1998 the defendant filed a Motion to Suppress Tangible Evidence and Statements. Two days of evidentiary hearings were held on the July 20th and the 21st. During the hearing Detective Thomas Dumas of the East Hartford Police department, Detective Michael Shanley of the Southington Police department, Sergeant Gerald Pennington and Trooper Thomas Bennett of the Connecticut State Police testified. Each of the officers was assigned to the Connecticut Statewide Narcotics unit at the time of the defendant's arrest.
This court finds that a person named Michael Grimes was apprehended on March 9, 1995 at approximately 3:30 p.m. in the town of East Hartford as a result of an undercover narcotics investigation. While in custody of the police Mr. Grimes revealed that he purchased his narcotics from a person named "Pooky" earlier that day. Mr. Grimes agreed to call his supplier "Pooky" and set up another purchase of narcotics at approximately 6:45 p.m. that same day. Mr. Grimes arranged to have the purchase take place at the Texaco station located at Brainard Road in Hartford. Mr. Grimes indicated to the police that "Pooky" was a black male that drove a white Cadillac. The set of up the defendant was done by phone in the confines of Troop H in which no officer could testify to listening to Mr. Grimes' conversation with the defendant.
As a result of the phone call the police mobilized and went to the location to see if the defendant would show. Approximately five to six police units were involved in the arrest. Mr. Grimes accompanied Sergeant Pennington in his unmarked car and was stationed in such a position as he could identify the defendant. At or around the designated time the defendant came into the pickup area and was driving a white Cadillac heading north on Brainard Road. When in view Mr. Grimes identified the car, that being the white Cadillac and that "Pooky" was driving the car. At that time Sergeant Pennington by radio notified the other units and coverage began on the defendant.
The defendant turned down Airport Road and had to stop at a light at the intersection. The police then surrounded the defendant's car and he was taken out of the car. The Pennington vehicle then pulled in behind the defendant's car and once again he was identified by Mr. Grimes as being the person he knew as CT Page 11427 "Pooky". Once outside of the vehicle the defendant was asked if he had any narcotics on him or in the car and he said "no". When he was searched the officer found about 4 packages of cocaine weighing about 25 grams on his person.
At the hearing the defendant through counsel conceded that the police had a reasonable articulable suspicion to stop the defendant's automobile and interrogate him. However, it is the defendant's contention that "the police went beyond the limits of a custodial interrogation as they began to search the automobile before the interrogation was concluded and they searched the person of the defendant immediately after the interrogation was concluded even though the defendant had told the police that he was not in possession of narcotics."
In viewing the defendant's claims it has long been held that police officers are required to obtain a warrant prior to a search expect when the search is conducted incident to a lawful custodial arrest. A lawful warrantless felony arrest requires that the arrest be supported by probable cause. This exception permits a police officer to conduct a full search of an arrestee and to seize evidence as well as weapons. Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed. Even if a search and seizure chronologically precede a formal arrest, the search and seizure may be constitutionally valid as long as the arrest and the search and seizure are substantially contemporaneous and are integral parts of the same incident.
The State urges this court to follow the ruling in Statev. Valez, 215 Conn. 667 (1990), a case somewhat factually similar to the issue at hand. The State noted thatValez was decided under the prior more restrictive two-prong analysis known as the Aguilar-Spinelli test, and that this court should apply the "totality of the circumstances test" as defined under Illinois v. Gates,462 U.S. 213 (1982).
Since the defendant believes the police had a reasonable articulable suspicion to stop the defendant it is necessary to examine the facts from the point of the first identification of the automobile and the defendant. This court finds that Mr. Grime's act of identifying his supplier as one of CT Page 11428 his many declarations against his penal interests. Each act of verbally identifying the defendant by his street name, the setting up of the sting along with his identifying the defendant by car and person on two separate occasions constitute declarations against his penal interests. Here the defendant concedes the indicia of credibility of the informant up to the time that the police stopped the defendant.
This court finds that the informant's act of identifying the defendant at the scene once again by car and person supplied the police with sufficient probable cause for the arrest and subsequent search of the defendant. This court finds that the search even though it chronologically preceded the arrest it was contemporaneous in its execution and was an integral part of the same incident. In considering all of the facts available to the police along with the reasonable inferences than could be drawn from the situation based upon the officer's training and experience this court finds that under the totality of the circumstances there was sufficient probable cause for the arrest of the defendant.
THE MOTION IS DENIED.
Norko, J.